The next case is ARP Materials v. U.S. No. 21-2176. Good morning. I'm pleased to report for Kevin McCain, the Law Firm Associate of Public Pay, we represent ARP Materials and Harrison Steel Castings in this consolidated appeal. If there ever was a prototypical case for jurisdiction under 1581i, this consolidated case is it. The subject matter was and is the administration of tariffs, fees, or taxes on the importation of merchandise for reasons other than raising revenues, as it involves retaliatory impugnment assessed against Chinese IPR practices under the Trade Act of 1974, Section 301. The subject matter is more specifically the ministerial administration of the decisions of the U.S. DR by customs relative to China's 301D refunds that the U.S. DR had ordered to mitigate on to U.S. industries as a result of the assessment of the 301Ds. Before reaching an inestimable conclusion that 1581i jurisdiction applies, all of the subparts, A through H, must be bound to be manifestly inadequate. In this case, the CIT settled on 1581a under the most simple applied adage, if you can file a protest with customs, you have 1581 jurisdiction. In the CIT, if customs denies the protest. Well, liquidation is a precondition to any protest, and any liquidation can be protested. But that doesn't automatically mean we're valid in protest. There are numerous cases that have been cited in law briefs which have found the Customs Act to be a ministerial act, and a ministerially performed act by customs is not protestable. Even if it made one of the seven decisions that are listed in the protest statute, which includes liquidation, the government has had some difficulty in cross-citing these cases. Mr. Kane, what do you want in this case? We want the case to be remanded to the Court of International Trade. What do you want the court to do if this were an I case? Do you want the court to order that the liquidation be reliquidated to give you a refund? Well, under U.S. Code 2634, I think the Court of International Trade has equitable authority to grant 20 judgments. We decided to cut to actual entries to demonstrate our injury in standing in the Court of International Trade. But this is really not an entry-specific case. Well, that's what I don't understand, Mr. Kane. If you were asking for some kind of broad declaration or something and not anything further, I might see how you could get under I. But at the end of the day, you want the liquidation decision redone and a refund, right? Well, that would be the ideal outcome from the final analysis. But we think that since there are at least nine other cases that are suspendable in this case, the Court of International Trade either has to be directed by the real court or on its own to tell Customs that it can't require a protest. That's a refund of Section 301 to be refunded or to require a request at all. But Customs has liquidated the duties that they collected for 301, and the only way—and that's a final decision unless it's challenged. We don't have any authority, do we, to overturn that final decision? Well, if we look to the decisions of this Court in Cheney v. Corporate America in 2004, 2008, and 2010, the conflict between the two jurisdictional bases, 1581i and 1581a, was after the Court of International Trade had dismissed our finding that it was 1581a. What was involved was an instruction from the Department of Commerce to Customs to liquidate some entries after an administrative review had been conducted, and the calculations that were determined in the administrative review were incorrectly attributed to Customs, and Customs liquidated the entries. The Court held that the jurisdiction lay under 1581i. Ultimately, the case was settled, and in the 2010 decision, the Court of International Trade was—the case was remanded again to the Court of International Trade to find the amount of equal access to justice attorney's fees that the plaintiff was entitled to because of the Customs and government recalcitrance, insisting over and over again that 1581a was the bottom of the jurisdiction. But my problem is, in this case, the ultimate remedy you want is your money back, and you can get your money back if you protest the decision. So how is a not available in the right remedy, and certainly not manifestly inadequate? It's not a protestable decision because it's not a decision by Customs. Customs— Well, that's just plain wrong that it's not a protestable decision because there have been protests of these decisions, and you've gotten refunds of these. It's just some of them, you've missed the time deadline. Your Honor, if the government—money would not have to go to court on the basis of a time—we saw no objection to doing that. As Napoleon or Caesar or one famous general after another said, when your enemy is making an error, you don't correct him in the middle of it. It wouldn't serve any purpose for us to argue with the government saying that they shouldn't be required to 1581a protest—19USC 1514 protest—if they wanted to give us the money back. Mr. Kennedy, excuse me, this is Judge Lynn. I'm having the same problem that Judge Hughes is having because ultimately what you're after is a determination by Customs that these goods should be reliquidated, and they are liquidated, and there is—our law is very clear that once the goods are liquidated, that's a final determination that can only be changed if Customs reliquidates, and so it seems to me that—and you clearly have the opportunity to do that through a protest. May I respond to that, Your Honor? Yes, please. 1581a requires the following valid protest. The valid protest requires a decision by Customs, timeliness, and specificity in distinct information. The decision of the Supreme Court in Davies v. Arthur, when Justice Ray Arthur was the Supreme Court, was distinctly and specifically grounded in which the objection is that the amount claimed, it fails to require the protest statute. The purpose of the protest statute is to point out to the offices of Customs the precise errors of fact or which render the exaction of Davies unauthorized. That case was cited by the Court in 1999 in Courtney-Averns v. U.S. where it was held that if the protester didn't provide the classification that it wanted Customs to substitute against the original classification that was used at entry—I'm sorry, at liquidation—it was an invalid protest. And our client, most specifically in this case with Harrison, Harrison had entries of base metal fittings that were not excluded until more than 180 days after liquidation of the entries. So there was no ability to file a protest with the information about the classification that we wanted them to use at Customs in law from when that was used at entry. And when the exclusion is granted, there's a Federal Register notice. And along with the Federal Register notice, there is a designation of a new Chapter 99 classification to be used indicating that the merchandise has qualified for an exception, an exclusion. And there was no way we could have done that. It just affected the final protest because it didn't have a valid protest. It would have been a hole in the protest. And for $53,000— Mr. Kane, was your client seeking an exclusion at the time of the liquidation decision? Was our client? Yes. Now, they individually were denied it. There were 53,000 exclusion requests. 87% of the exclusion requests were denied. If we follow the guidance of the Court of International Trade— Well, if you weren't seeking— —53,000 protest files— Mr. Kane, please wait for the questions. I know there's some lag, but you're talking over me. If you weren't seeking an exclusion at the time the entry was done and it was liquidated, then it was correct at the time. You're trying to get the effect of an exclusion request filed by a different entity after the fact. But, I mean, there's guidance in all of this 301 implementation program that would have allowed you, if you had a basis to seek an exclusion for this entry, even if it hadn't been granted, to protest it and allow customs to suspend them. Isn't that correct? The exclusions under 301 were product-specific, and more than product-specific. They were not just the HDS number. They were a specific description of the merchandise. We have a client that paid 19 exclusion requests under a single HDS number. I don't know why that matters. If your client wasn't specifically seeking the exclusion and asked to suspend the—if they were, they could have asked to suspend the liquidation. If not, you're trying to get the effect of something you weren't even challenging at the time. But everyone's entitled to it. That was the basis for the government. They asked to tell the people that they could file a protest. But, counsel, aren't they— Not everyone can file a protest. You didn't make an exclusion request. Counsel, aren't they entitled to it under a particular procedure? It's a particular procedure that has to be followed in order to be entitled to it if you yourself are not going to seek the exclusion in front of the USTR, right? Correct, correct. Well, the procedure that was put in place was the protest procedure, which was a square paper around home. You know, the government claims that the only way that they could have issued refunds under the—to refund the regime of the USTR was through protest methods. And that's not true. There are—there's ample authority for customs and other agencies to promulgate regulations that would have allowed the public the opportunity to point out the problem that we have in this very case, where if the USTR took more than 494 days to render a decision on an exclusion, people who made the entry on the first day that the exclusion was—I'm sorry, the first day that that particular list was in effect, they'd be unable to get a refund under the protest because they wouldn't have the information they needed to file a protest and they would have no way of knowing that the USTR would actually issue an exclusion on that—on that version. I have one more question for you, which is I noticed that in your brief you have some sort of APA challenge. But I'm looking—when I looked at your briefs below, I didn't see that clearly spelled out. Did you argue that below? I don't think we did that detail below. All right. Mr. Kane, you're well into your rebuttal time. Why don't you save the rest of it and we'll hear from the government. Thank you. May it please the Court. The trial court's decision should be affirmed as it correctly determined that it did not have jurisdiction pursuant to Section 1581I because it would have had jurisdiction pursuant to Section 1581A if appellants had timely protested CBP's liquidations. As the trial court succinctly put it, appellants— Let me just interrupt you and get to the last point Mr. Kane raised, or at least what I heard him to be raising, which is that he's challenging—and maybe he didn't preserve it—he's challenging not just the exclusion and the refund in this particular case, but the entire way this program was implemented by USTR and Customs that didn't set up a separate refund process and forced it to go through the protest system. If that was his argument, could he bring that in a different way than through a protest if it's kind of a facial challenge to the way the program was set up? Well, I'll try and take your Honor's answer in two parts. Specifically with regard to what appellants did, I think your Honor's noted that they sort of vaguely alluded to APA in their brief below and then again here, but they didn't really raise an APA claim in the trial court correctly determined not to address one because it didn't have jurisdiction. If they had squarely raised an APA claim—I think I'm reading your Honor's question to refer to maybe that USTR and CBP had the authority to set up this framework in the first place—then I think that they run into a few problems. I think the only way that they could potentially have brought one is through Section 1581i, but if they were going to do so, they should have done so within two years of USTR and CBP coming up with this framework. With the program, right? With the program, so years ago. And they haven't done so, and now they're outside of the statute of limitations. If they thought that forcing this through—forcing is not the right word—requiring them to use the traditional protest of the liquidation, if they thought that that just didn't make sense, wasn't consistent with 301 and the proclamation under 301, and USTR should just have set up a refund system administered by whoever for them to send in a notice saying, I want a refund because you excluded that. Do you think USTR could have done that? I do not. So I think that they would have had to raise the claim in the way that I just mentioned, but I don't think that there would be any merit to that claim in the first place. And why is that? Well, we specifically noted that not only did CBP have the authority to do so, but they were supposed to do so, because section 1500 and section 1514 taken together mean that CBP is the master of liquidations and classifications. And the way that USTR implemented the 301 decisions in the first place was through the insertion of an HTS subheading that specifically categorized entries as subject to the 301 tariffs. So the only way they could then exclude them was through the insertion of another subheading, and that would be effectuated and classified by CBP through liquidation. Moreover, I think appellants raised in their, I can't remember if it was their opening brief or reply brief in front of this court, ways that they theorized that USTR and CBP could have instituted these refunds. However, I don't think that any of them are necessarily statutorily authorized, and I don't believe they raised these potential alternate methods before the trial court. So it's not for this court to consider those in the first instance. What about their, I think, equity point that some of these people didn't seek exclusions, but under exclusions, granted, they would have been entitled to the same thing, but it just happened too late in the game for them to take advantage under ed. I mean, what should they have done if they didn't want to seek their own exclusion? Is it just that's on them? Or is there other steps they could have taken to kept their liquidation open, even if they weren't seeking an exclusion? Because I do think Mr. Kane has a point that is that you can't just protest if you don't have some disagreement with it. And if you're not seeking exclusion, what would your protest be? So like usual, a couple different answers to that. I think your honors question seems to go to the question of whether the remedy was manifestly inadequate under Section 1581i. And as this court has held, that's a high bar. It has to basically mean that the protest is useless or incapable of producing any result. We completely agree that the exclusions are product specific, and so other importers or distributors did take advantage of an exclusion that they did not themselves request, so long as they proved to CBP that their products met that exclusion and filed a timely protest. Now, Mr. Kane states that the appellants in this case did not have the chance to do so. I think that in this case, AARP and Harrison are actually in completely different boats. AARP certainly had every chance to file a timely protest because the exclusion requests were granted either before AARP's entries even liquidated, or in one case, only five days into that 180-day period. So they have no excuse whatsoever. With regard to Harrison, I think your honor asked, what could Harrison have done? And CBP actually made the process very clear for those importers on May 22nd of 2019, which was before the exclusion request relevant to Harrison was filed and months before Harrison's entries liquidated, CBP issued guidance in a CSMS message that basically stated that importers should file, I don't remember if they used this term exactly, but we used and the trial court used the term protective protest on things where they knew that there was an exclusion request pending, but the entries might be liquidated before the request was granted, and then CBP would basically hold the decision on a protest until the exclusion was granted. So CBP foresaw that this might be an issue and specifically carved out a way for protesters to preserve and file a timely protest while waiting for the exclusion decision. And I think even as appellants counsel pointed out, there was also the opportunity for importers to request an extension of the liquidation. So they actually had a couple different options as to how they could have kept the right to did not do so. This does not entitle them to jurisdiction under 1581I as it does not render 1581A inadequate. The only last thing I'd like to say, unless this court has questions, is that we pointed out and the trial court astutely pointed out that USTR's decision on exclusions was not self-executing. It necessarily involved CBP in its traditional role as the liquidator, and this court has held time and again in Xerox, Cemex, Felgium, Hutchinson, Juice, and so on, that liquidations are subject to the timely protest requirement, and that's what we have going on here. I'm happy to answer any other questions. Otherwise, we respectfully request that the court affirm. Thank you. Thank you. Mr. Kane, you have a couple minutes left. Sorry, can you stop? We can't hear you. Sorry. Okay. Can you hear me now? Yes. I just made the winning argument, and you missed it. I have several points that I'd like to make here. The reason, I'm sorry, what the CSMS was a custom service messenger, a message system. It was an electronic message that was available on the internet, and it didn't say that importers should protest. It said they may protest. It didn't say that failure to file a protest was going to be damning in any way. It just said you may protest. At the time, customs and USDR were finding their way through this process. The 2021 GAO report entitled, USDR should fully document internal procedures for making tariff exclusion and extension decisions, points out a whole 80 pages of shoddiness that USDR had that they didn't realize what they were dealing with, and how it should be dealt with. As far as a program being contested by us, we would not have had standing until we had been denied a refund. The refund system, as your Honor may recall, with the Hall of Maintenance tax, was cobbled together by the Department of Justice and Customs, outside of any kind of statutory well, I don't know, any statutory restrictions made to effectuate our refund system. There's no reason, if Customs was supposed to effectuate the decisions of the USDR, there's no reason why Customs would freeze out entries that were subject of spear-wounding reason, that would not be able to be refunded because the protest actually acted as a bar. The USDR was intending, by making the exclusions, an opportunity to make right the burden that had recently been placed on importers of certain products that would have affected US companies and US workers, and by Customs using the protest statute to say, you have 180 days after liquidation to get your refund, that ignored at least 17 rounds of refund that could have been gotten under exclusions that were made by the USDR after 494 days of the initial date of the implementation of that list. I use that date because Customs used 314 days of liquidation plus 180, that's 494. Anything beyond that would be foreclosed from getting a refund. Okay, thank you Mr. Kane. Your time has expired. We have your arguments, I think. Thank both counsel for their arguments. The case is submitted.